AO 472 (Rev. 11/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

District of Puerto Rico

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 24-146 (GMM) |
| Emmanuel Alamo-Cruz ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472 (Rev. 11/16) Order of Detention Pending Trial

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

   ☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

   ☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

   ☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

   ☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

   ☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

   ☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

   **OR**

   ☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

   ☒ Weight of evidence against the defendant is strong
   ☒ Subject to lengthy period of incarceration if convicted
   ☐ Prior criminal history
   ☒ Participation in criminal activity while on probation, parole, or supervision
   ☒ History of violence or use of weapons
   ☒ History of alcohol or substance abuse
   ☒ Lack of stable employment
   ☐ Lack of stable residence
   ☐ Lack of financially responsible sureties
   ☐ Lack of significant community or family ties to this district

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States
- ☐ Subject to removal or deportation after serving any period of incarceration
- ☐ Prior failure to appear in court as ordered
- ☐ Prior attempt(s) to evade law enforcement
- ☐ Use of alias(es) or false documents
- ☐ Background information unknown or unverified
- ☒ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

SEE ATTACHED PAGE

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:     04/26/2024                                             s/ Marshal D. Morgan
                                                                  United States Magistrate Judge

After considering the proffers by the parties, the arguments of counsel, the evidence presented during the detention hearing, the Pretrial Services Report, the facts alleged in the Criminal Complaint, and the jurisprudence cited to by the defendant, the Court finds that the Government has proven by clear and convincing evidence that no condition or conditions of release could reasonably assure the safety of the community, and by preponderance of the evidence that no condition or conditions of release could reasonably assure the defendant's appearance as required. The Court explains.

### I. Relevant Facts

On April 10, 2024, at approximately 1:30AM, officers from the Guaynabo Municipal Police Department ("GMPD") conducted a traffic stop on a cream-colored Toyota Camry for having committed a variety of traffic violations. As the officers approached the vehicle, they observed four individuals inside and detected a strong odor of marijuana coming from the vehicle. When confronted by police, the driver said that he and the three other individuals in the car had all smoked marijuana, and to prove it, he opened the ashtray to show the officer the remnants of the smoked marijuana cigarette (also known as a "joint"). The defendant, Emmanuel Alamo-Cruz, was seated in the front passenger's seat, while two female minors, ages 16 and 17, were seated in the back. The officers asked all four individuals to exit the vehicle whereupon they were each placed under arrest.

Police then obtained a local search warrant for the vehicle. Upon executing the search warrant, they discovered the following items inside: 1) one 24-round magazine, fully loaded with twenty-four (24) rounds of 9mm ammunition, which was found under the driver's seat of the vehicle, 2) one partially smoked marijuana cigarette ("joint"), which was found in the vehicle's ashtray, 3) one cross-body bag with a "Homer Simpson" logo and one 9mm shell casing inside, 4) one loose 9mm shell casing, which was found under the front passenger's seat, 5) one small marijuana joint, which was found under the back seat, 6) one black cross-body bag, which was found on the floor of the front passenger's side, with three 9mm pistol magazines inside, one of which was loaded to capacity with 17 rounds of 9mm ammunition, another 10-capacity magazine loaded with 9 rounds of 9mm ammunition, and a third 31-capacity magazine loaded with 15 rounds of 9mm ammunition, and 7) one Glock pistol, Model 26, with a 24-round magazine, fully loaded with a bullet in the chamber, found under the driver's seat.

The defendant was read his *Miranda* rights, which he voluntarily waived, and agreed to speak with law enforcement officers. During the interview, the defendant was asked if he had a cellular phone, to wit he said, "Yes." He then granted his consent for the officers to search it. The defendant also told the officers that a) the vehicle belonged to his cousin, and that he had been using it for the previous three weeks, b) he told his friend, Miguel Angel Olmo García,[1] to drive the vehicle, c) he and Olmo García had picked up two female friends to take them to dinner and

---

[1] The Government proffered that Miguel Angel Olmo García was wanted by local authorities as part of a murder investigation. The defendant did not dispute the Government's proffer and instead recognized that Mr. Olmo García had a 2022 charge related to an illegal firearm and that he was wanted "for another serious offense."

to smoke marijuana, d) they were driving in Guaynabo when Olmo-García failed to stop at a red light, whereupon he was stopped by GMPD officers, and e) he did not know where the firearm came from. A short time later, however, after the officers found a photo of him on the cellphone holding a firearm that was identical to the one found in the vehicle, he then said that he only "possessed the firearm to take a photo," and that the conversion of the backplate of the firearm, which had an auto-sear "chip" used to modify the weapon to fire automatically, was made in Puerto Rico. See Docket No. at 1.

Then, after discovering the evidence in the vehicle and based on the defendant's admission as to his knowledge of the modification of the firearm, the grand jury returned an indictment against the defendant charging him with one count of possessing a machinegun, in violation of Title 18, *United States Code*, Sections 922(o) and 924(a)(2). See Docket No. 8.

## II. The Pretrial Services Report

The defendant is a 24-year-old male with an 11th grade education who has fathered three children, the youngest of which is only four months old.[2] The defendant is currently unemployed and has been for the past seven months. He reported that he works occasionally as a barber from his home earning $15.00 an hour. He has no passport, and he disclaimed any foreign travel.

With respect to his criminal history, at the time of his arrest in this case, the defendant was on bail and under conditions of release for a state misdemeanor charge of stalking. He also purportedly owes $5,210.00 in traffic fines.

With respect to his mental health, the defendant reported suffering from anxiety, depression, aggressive behavior, and psychosis, for which he takes a number of psychotropic medications. He also reported having attempted suicide when he was 17 years old by ingesting pills. In his short lifetime, the defendant reported having to be hospitalized for mental health treatment on more than 15 occasions.

Based on the above, the United States Probation Officer recommended that the defendant be detained without bail pending trial based on his being a danger to the community and a serious risk of flight. See Docket No. 11.

## III. The Detention Hearing

During the detention hearing, the parties proceeded by way of proffer. Because this is not a presumption case, the government argued first and agreed with the recommendation in the Pretrial Services Report that the defendant be detained without bail. In support of that request, the Government highlighted the facts alleged in the Criminal Complaint as well as relevant information from the Pretrial Services Report.

The defense meanwhile argued that there were conditions that could be fashioned to assure both the safety of the community and defendant's appearance at future proceedings. In support of that request, Counsel for the defendant cited to,

---

[2] During his pretrial services interview, the defendant failed to mention the youngest of his three children. Instead, it was his mother who volunteered that information to the pretrial services officer.

among other things, the defendant's personal circumstances of being a father of three, having no foreign travel history, having a clean social media-footprint, and having strong family support, as evidenced by the presence of his mother and sister in court during the hearing. He also proposed his mother to act as a third-party custodian.

With respect to his mental health history, counsel agreed that his client needed mental health treatment but argued that he would get no mental health treatment if he remained detained at MDC.

With respect to the photo of him holding the firearm that was found in his cellphone, counsel suggested that that was more "an indication of poor judgment" and "ill-advised posturing" than anything else.

Regarding the fact that the defendant was under conditions of release at the time of his arrest in this case, counsel argued that the state stalking charges were ultimately dismissed on April 17, 2024 due to the purported failure of the police officer to appear in court.[3]

Lastly, counsel cited to two cases from this district which he claims support his request for conditions of release in this case. The first case is *United States v. Berrios-Aquino*, 2022 WL 17075919 (D. P.R. 2022). In *Berrios-Aquino*, the Court was faced with a situation involving a licensed gunsmith who was found in possession of one or more machineguns at his workplace, a well-known commercial armory and shooting range. The undersigned Magistrate Judge initially granted bail to the defendant, and on rehearing, Judge Daniel R. Dominguez independently ruled the same.

A close look at the facts in *Berrios-Aquino*, however, reveals that the facts of that case are inapposite to the facts of this case. More specifically, in *Berrios-Aquino*, the defendant was 38 years old; he had no prior criminal history; he possessed a bachelor's degree and had started his master's degree; he possessed a firearm's permit and an instructor of firearms' permit; and he maintained a steady job at the Armory. In addition, his long-time consensual partner had been approved to act as his third-party custodian and the pretrial services officer recommended conditions of release.

The second case cited by the defendant is *United States v. Eli Yaniel Couvertier-Pollack*, Crim No. 24-124-4 (Opinion and Order) (D.P.R. April 24, 2024 at Docket Entry No. 91) (J. Arias-Marxuach). In *Couvertier*, a 26-year-old male was stopped by local police on October 31, 2022 after receipt by law enforcement of a tip that the occupants of a red Jeep were armed. After the officers boxed in the red Jeep, all four occupants attempted to flee. However, Mr. Couvertier and two others were immediately apprehended by police. Inside the center console of the red Jeep officers found a Glock 19 pistol that had been modified to fire automatically. A second Glock 19 pistol was found under the front passenger's seat. Mr. Couvertier was the individual seated in the back seat on the passenger's side.

After his arrest, Mr. Couvertier consented to a search of his cellphone inside of which law enforcement found several photos and videos of him shooting machineguns and displaying other firearms and drum magazines. They also found on his cellphone conversations referencing the sale of firearms.

---

[3] Notwithstanding the fact that the state charges for stalking were subsequently dismissed on April 17, 2024, on the day of his arrest in this case, April 10, 2024, he was still on conditions of release imposed by the state court.

Mr. Couvertier was initially charged for weapons violations in local court and he was granted bail pending the state proceedings. Thereafter, on April 1, 2023, Mr. Couvertier was charged by federal authorities for the same conduct as the state court and was also granted bail pending the federal proceedings.

During the reopening of his bail hearing before Chief Judge Arias Marxuach, the Court found it most compelling that after being arrested by local authorities on October 31, 2022, for possessing the illegal firearms and being placed on conditions of release, he complied fully with the conditions imposed by the court. Indeed, in justifying his order on rehearing granting Mr. Couvertier conditions of release, Chief Judge Arias stated that,

> there is no evidence that Mr. Couvertier violated any conditions of release during the approximately five months that his Commonwealth Court charges were pending. He appeared before this Court twice for the *de novo* hearing. The Government presents no evidence that he handled or sold firearms since his first arrest on October 31, 2023, and the vast majority of the Government's evidence predates that event.

Contrary to the facts cited to by the defense, the defendant in this case is an unemployed male who chose, while on conditions of release for local stalking charges, to drive around town in the middle of the night, on a weeknight, smoke marijuana with an individual wanted by local authorities in a murder investigation, and two minor females, while storing a machinegun under the driver's seat. He also brought along a stockpile of ammunition,[4] with at least five high-capacity magazines, almost all of which were loaded to capacity. There were also two spent bullet casings, one of which was loose on the floor, thus indicating that at some time a gun of the same caliber as that found under the driver's seat may have been fired from inside the vehicle.

Most importantly, contrary to the facts in *Couvertier* where the defendant had proven to the Court that he could follow the conditions of release set by the state court, in this case, the defendant has proven the exact opposite–that he was unable to follow the state conditions of release. Indeed, he felt so unconstrained by the conditions that he chose to engage in new criminal conduct.

Equally troubling is the fact that the defendant suffers from major psychological issues such that he takes medication for "psychosis." The Court notes that "psychosis" is defined as "a severe mental condition in which thought, and emotions are so affected that contact is lost with external reality." (Definition provided Google Dictionary). The Court is concerned by the fact that an individual suffering from a condition that detaches him from reality would choose to possess a

---

[4] The Court notes that 100 plus rounds of ammunition is not an exceedingly large quantity if one were going to the shooting range to practice. However, driving around town on a weeknight with two minor females, a machinegun and more than 100 rounds of ammunition, is not only reckless and illegal, but also implies a readiness to go to war or to do harm to others. It is like a powder keg ready to explode.

machinegun while at the same time using controlled substances. Such a situation is rife with concerns for the defendant's own safety and for that of the community. It also provides slim, if any, assurances regarding defendant's commitment to appear at future court proceedings.

In the final analysis, the Court finds that the two cases cited by the defendant are wholly distinguishable from the facts of this case. The defendant is not similarly situated to those defendants and has, instead, proven himself to be a danger to the community and a serious risk of flight.

### IV. Conclusion

In light of the above, the Court finds that the Government has proven by clear and convincing evidence that no condition or conditions of release could reasonably assure the safety of the community, and by preponderance of the evidence that no condition or conditions of release could reasonably assure the defendant's appearance as required.

**IT IS SO ORDERED.**

*s/Marshal D. Morgan*
MARSHAL D. MORGAN
United States Magistrate Judge
District of Puerto Rico