**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| v. | **Crim. No. 24-00146 (GMM)** |
| Emmanuel Alamo-Cruz | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is Defendant Emmanuel Alamo-Cruz's ("Alamo" or "Defendant") *Motion Requesting Revocation of Detention Order or De Novo Bail Hearing Under 18 U.S.C. § 3145(b)* ("*Motion*"). (Docket No. 21). For the reasons that follow, the Court **DENIES** the *Motion*. Alamo shall be detained without bail pending trial.

## I.    PROCEDURAL BACKGROUND

On April 12, 2024, a Criminal Complaint was lodged against Alamo. (Docket No. 1). On April 17, 2024, the Grand Jury charged Alamo in a one count Indictment for illegal possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). *See* (Docket No. 8).

On April 23, 2024, the U.S. Probation Office filed Alamo's *Pretrial Services Report* ("PSR"), recommending that Alamo be detained pending trial. *See* (Docket No. 11 at 5). In the PSR, the U.S. Probation Office characterized Alamo as a flight risk and a danger to the community for a range of reasons including: the

Crim. No. 24-146 (GMM)
Page -2-

nature of the offense charged, his prior arrest, his mental health history, his substance abuse history, and his lack of verifiable and legitimate employment. *See* (id.). Furthermore, the U.S. Probation Office advised that "[t]here is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community." (Id.).

On April 24, 2024, Alamo filed a *Motion for Pretrial Release*. (Docket No. 12). He argued that there are conditions of release that can: (1) reasonably assure his appearance before this Court and (2) maintain the safety of the community. *See* (id.). Those conditions include that he: execute a $10,000 unsecured bond; reside with his mother at the address of record; maintain employment or start and education program; and participate in mental health treatment as required by the U.S. Probation Office and a mental health professional. *See* (id. at 11).

On April 26, 2024, Magistrate Judge Marshal D. Morgan (Magistrate Judge Morgan) held an arraignment and bail hearing and found that "the Government has proven by clear and convincing evidence that no condition or conditions of release could reasonably assure the safety of the community, and by preponderance of the evidence that no condition or conditions of release could

Crim. No. 24-146 (GMM)
Page -3-

reasonably assure [Alamo's] appearance as required." (Docket No. 14).

Later, on June 10, 2024, Alamo filed the *Motion*. (Docket No. 21). Therein, he moved the Court to revoke Magistrate Judge Morgan's *Order of Detention Pending Trial* (Docket No. 14) pursuant to 18 U.S.C. § 3145(b) or, in the alternative, hold a *de novo* detention hearing. (Id.). The United States of America ("Government") opposed the *Motion* and asked the Court to deny it in its entirety. (Docket No. 23).

The Court held a *de novo* hearing on July 8, 2024. (Docket No. 29). At the hearing, the Government proffered several exhibits and argued against conditions of release. Alamo also proceeded by way of proffer. He argued that conditions of release can be fashioned to secure his appearance in Court and reasonably assure the safety of the community. At the conclusion of the *de novo* hearing, the Court took the matter under advisement and maintained the *status quo* to review the record in more detail.

## II.   LEGAL STANDARD

A.    Standard of Review of a Detention Order Pursuant to the Bail Reform Act

A district court reviews "a magistrate judge's order of detention or release under a *de novo* standard and 'need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Ramos-Meléndez, Crim. No. 24-77

(RAM), 2024 WL 1430783, at *3 (D.P.R. April 3, 2024) (*quoting* United States v. Cidraz-Santiago, 18 F.Supp.3d 124, 126 (D.P.R. 2014)); *see also* United States v. Tortora, 922 F.2d 880, 883, n. 4 (1st Cir. 1990); United States v. Rodriguez-Romero, 18 F.Supp.3d 116, 118 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Cidraz-Santiago, 18 F.Supp.3d at 126.

In performing its duty, the district court must consider the statutory factors set forth by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156 ("Bail Reform Act"), at 18 U.S.C. § 3142. *See* Rodriguez-Romero, 18 F.Supp.3d at 118; U.S. v. Torres-Rosario, 600 F.Supp.2d 327, 330 (D.P.R. 2009).

B.    Bail Reform Act

The Bail Reform Act provides for the pretrial detainment of persons after a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . ." 18 U.S.C. § 3142(e). "The government must establish risk of flight by a preponderance of the evidence [(i.e., that it is more likely than not)]; and/or dangerousness by clear and convincing evidence." United States v. Vázquez-Cintrón, Criminal No. 19-685 (PAD), 2020 WL 1310540, at *1 (D.P.R. Mar. 17, 2020)

(*citing* United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991)); *see also* United States v. Bula-Cartagena, Crim. No 24-124-2 (RAM), 2024 WL 2091542, at *5 (D.P.R. May 9, 2024). Clear and convincing evidence as to dangerousness is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F.Supp. 501, 509 (D.P.R. 1984), *aff'd*, United States v. Acevedo-Ramos, 755 F.2d 203 (1st Cir. 1985).

To determine if the government has met its burden, the district court must consider the following factors: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." Tortora, 922 F.2d at 884; *see also* 18 U.S.C. § 3142(g). Danger is not limited to the risk of physical violence. Id.

### III. DISCUSSION

Foremost, the statutory presumption in favor of detention does not apply. *See* 18 U.S.C. § 3142(e)(2) & (3); *see also* United States v. Bula-Cartagena, Crim. No. 24-124-4 (RAM), 2024 WL 2091542, at *5 (D.P.R. May 9, 2024) (noting that the offense of possession of a machinegun does not give rise to the Bail Reform

Act's statutory presumption in favor of detention); <u>United States v. Berríos-Aquino</u>, Crim. No. 22-473 (DRD), 2022 WL 17075919, at *2 (D.P.R. Nov. 18, 2022) (same). The Bail Reform Act does, however, allow a Court to impose "pretrial detention in cases that involve a felony that involves the possession or use of a firearm or any other dangerous weapon." <u>Bula-Cartagena</u>, 2024 WL 2091542, at *5 (*citing* <u>Berríos-Aquino</u>, 2022 WL 17075919, at *2; 18 U.S.C. § 3142(f)(1)(E)).

Upon considering the proffers, the PSR, Magistrate Judge Morgan's *Order of Detention Pending Trial*, and the overall record, the Court finds that the Government proved by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community.

A.    <u>The Nature and Circumstances of the Offense Charged</u>

The Grand Jury charged Alamo in a one count Indictment for illegal possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). *See* (Docket No. 8). Specifically, the indictment provides that Alamo knowingly possessed a Glock Pistol model 26, 9mm caliber (bearing serial number ZDL977), which was modified to shoot more than one shot, without manual reloading, by a single function of the trigger. *See* (<u>id.</u>). If convicted, Alamo could be sentenced to up to ten years of imprisonment. *See* 18 U.S.C. § 924(a)(2).

According to the Government's proffer, around 1:30 a.m., police officers stopped a vehicle for improper lane change, failure to stop at a red light, and noise pollution due to the alteration of the muffler. *See* (Docket Nos. 23 at 1, 4; 1-1 at 1 ¶ 5). Upon approaching the vehicle, police officers identified four passengers inside: Alamo, who was the front seat passenger; the driver, who was a person of interest in a state murder case; and two female minors; who were aged 16 and 17 years old. (Docket Nos. 23 at 1; 1-1 at 2 ¶ 7). All four individuals were arrested. (Id.).

The police officers then obtained a search warrant to search the vehicle. As relevant here, the following items were discovered:

(i)   One 24-round capacity magazine, caliber 9mm, loaded with 24 rounds found under the front driver seat;

(ii)  An opened black cross body bag on the front passenger floor containing a small red plastic baggie with a 9mm caliber gun shell casing inside; A black cross body bag found under the front driver seat containing three 9mm caliber magazines: one 31-round capacity magazine loaded with 15 rounds of 9mm caliber ammunition, one 17-round capacity magazine loaded with 17 rounds of 9mm caliber ammunition, and one 10-capacity magazine loaded with nine rounds of 9mm caliber ammunition;

(iii) A 9mm caliber gun shell casing found under the front passenger seat; and

(iv)  A Glock Pistol model 26, 9mm caliber (bearing serial number ZDL977), which was modified to function in a fully automatic manner, loaded with a 24-round capacity magazine containing 24 rounds of 9mm caliber ammunition, including one round in the chamber.

*See* (Docket No. 1-1 at 2 ¶ 8). Later, when Alamo was interviewed by the authorities, he stated that he did not know the origin of

the Glock pistol found in the vehicle. *See* (id. at 3 ¶ 11). However, in conducting an authorized search of Alamo's cellular phone, Homeland Security Investigations ("HIS") identified a photograph of Alamo holding a pistol comparable to the one found in the vehicle. *See* (Docket Nos. 23 at 2; 1-1 at 3 ¶ 11).

Illegal possession of a machinegun is a serious crime. *See* Bula-Cartagena, 2024 WL 2091542, at *5; Berríos-Aquino, 2022 WL 17075919, at *2; United States v. Diaz-Collazo, Crim. No. 17-504 (PAD), 2018 WL 377277, at *2 (D.P.R. Jan. 11, 2018). Here, the severity of the charged firearms offense is augmented by a range of factors including: the fact that the pistol was found in a vehicle being driven on a public street; the fact that two of the vehicle's passengers were minors; the discovery of spent shell casings in the vehicle; and the recovery of high-capacity magazines from the vehicle. The Court thus finds that the charged offense, in concert with the named aggravating factors, weigh in favor of Alamo's continued detention.

B.   The Weight of the Evidence Against Defendant

The weight of the evidence against Alamo is strong. Alamo was found in the vehicle with the Glock pistol. HIS found a photograph on Alamo's phone depicting him carrying a pistol similar to that found in the vehicle. Moreover, Alamo's interview with authorities suggested that he may have known that the pistol was

modified. *See* (Docket No. 1-1 at 4 ¶ 12) ("[Alamo] was asked about
the black plate of the pistol, which was a homemade auto-sear
'chip' (used to modify the firearm to function like a fully
machinegun). [Alamo] stated that the conversion was made in Puerto
Rico."). Considering the evidentiary record before it, the Court
finds that this factor also favors detention.

C.    Alamo's Personal History and Characteristics

Alamo was born on December 25, 1999, in Puerto Rico; and he
is now 24 years old. The PSR avers that Alamo did not suffer any
traumatic events in his childhood. Alamo has three siblings from
whom he is estranged. Alamo is also the father of three children.

Alamo reported that he is a lifelong resident of Puerto Rico,
although at some point in time he was employed at a factory in
Wisconsin for a period of eight (8) months. Alamo does not possess
a valid U.S. passport and disclaimed any foreign travels outside
the United States. Alamo is not fluent in English. Due to Alamo's
strong community and family ties[1] in Puerto Rico, the Court finds
that Alamo represents little risk of flight. Nevertheless, the
Court finds that his other characteristics, as are described
hereafter, tip the scales in favor of detention.

As to his educational and occupational background, Alamo
completed an 11th grade education at a high school in Gurabo, Puerto

---

[1] Indeed, his mother and his girlfriend were present at the *de novo* hearing to
offer him support.

Rico. Currently, Alamo occasionally works as a barber at his residence. However, Alamo also reported no approximate monthly income, and the record indicates that he is financially supported by his mother. Notably, Alamo informed that he has not had stable employment for the past seven (7) months.

Alamo has no previous convictions. However, he was arrested for a misdemeanor on December 17, 2023, for violating Article 4 of Puerto Rico's Act No. 284 of 1999, Act Against Stalking in Puerto Rico ("Act No. 284"). Although the Act No. 284 charges were purportedly dropped for speedy trial violations, "nothing in the Bail Reform Act nor in the Constitution bars judges from considering a defendant's previous bad conduct even if it did not result in a conviction. . ." United States v. Ayala-Vega, 2023 WL 3559694, at *4 (D.P.R. May 19, 2023) (citing United States v. Acevedo-Ramos, 755 F.2d 203, 209 (1st Cir. 1985)). The Court, here, takes particular note of the fact that Alamo was on bond for his alleged Act No. 284 violation when he was arrested in the instant firearms offense, which would plainly constitute a violation of his bail conditions.

As it pertains to Alamo's mental health, the PSR informs that he reported "suffering from anxiety, depression, aggressive behavior, and psychosis due to [his] history of cocaine dependency." (Docket No. 11 at 3). Alamo also disclosed to the

Probation Office that he currently uses psychotropic medication, specifically: Depakote, Ativan, Trazodone, and Temazepam.

Ultimately, the Court finds that Alamo's characteristics, including his lack of stable employment; his alleged commission of the instant offense while on bond (indicating previous noncompliance with bail conditions); and his reported mental health struggles which include aggressive behavior; all weigh in favor of Alamo's continued detention.

D.    The Nature and Gravity of the Danger Posed by Alamo's Release

This factor also weighs in favor of Alamo's pretrial detention. At the time of his arrest, Alamo was (1) a passenger in a vehicle whose driver violated several traffic laws and was wanted for murder and (2) on bond in a state misdemeanor case for stalking. He was also found to be in possession of a machinegun with several high-capacity magazines. Moreover, Alamo reported suffering from several mental health conditions which could cause him to exhibit aggressive behavior. These facts lead the Court to the conclusion that Alamo's release would pose a danger to the community.

E. Potential Conditions of Release

Despite the factors described by the Court in this Order's previous sections, Alamo argues that there are bail conditions that are sufficient to allow his release. Those include a $10,000 unsecured bond; third-party custodianship under the supervision of his mother; steady employment or participation in an education program; and participation in mental health treatment. *See* (Docket No. 21 at 14). Alamo alleges that he is also willing to submit to additional conditions such as a curfew and electronic monitoring. *See* (id.).

However, considering Alamo's unique characteristics, the Court cannot conclude that his suggested conditions would "reasonably assure the safety of the community." First, Alamo previously failed to comply with bail conditions. The Court is accordingly concerned that Alamo would abide by any conditions it might set. Second, the events that gave rise to Alamo's arrest occurred while he resided with his mother, which casts doubt as to her suitability to serve as his third-party custodian. Third, after considering the four factors set forth in the Bail Reform Act, the proffers presented in the *de novo* hearing, and the record, the Court finds weight to the argument that electronic monitoring "cannot be expected to prevent [Alamo] from committing crimes or

**Crim. No. 24-146 (GMM)**
**Page -13-**

deter him from participating in felonious activity within the monitoring radius." <u>Tortora</u>, 922 F.2d at 887. Thus, the Court finds Alamo's suggested conditions to be insufficient to justify release.

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the Government has shown by clear and convincing evidence that no condition or combination of conditions will assure the safety of the community if Alamo were to be released. The factors set forth in section 3142(g) of the Bail Reform Act and in <u>Tortora</u>, 922 F.2d at 884 favor and support continued detention. Therefore, Alamo's *Motion* is **DENIED**. Alamo will remain detained without bail pending trial.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 19, 2023.


<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE